CLAY, Circuit Judge,
dissenting.
This case is well-suited for class certification because it alleges a common course of wrongful conduct that warrants injunctive relief for the class as a whole. Today’s result, which will require that Plaintiffs raise their claims in a series of individual but related lawsuits, will result *434 in a waste of economic and judicial resources that will do very little to address the alleged system-wide directives and policies of Unum. The majority, with little focus on the deferential standard of review that is required in these matters, has grossly misapplied this Court’s holdings in cases such as Reeb and Sprague, and has failed to apply a number of pertinent cases that support the district court’s grant of class certification. For these reasons and others, I would affirm the district court’s grant of class certification, and I respectfully dissent.
I.
Before addressing the majority opinion, it would be helpful to briefly review the background of this case and Unum’s responsibilities under ERISA. This case originated as a series of cases which were referred to the district court by a Judicial Panel on Multidistrict Litigation. On the basis of papers filed and a hearing held, the panel found that consolidated proceedings were appropriate because (1) the underlying actions involved common allegations that Unum engaged in improper claims handling practices in furtherance of a company-wide effort to reduce costs and inflate revenues; (2) the actions involved common questions of fact; and (3) litigation could be expected to focus on a significant number of common events, defendants, and/or witnesses.
The named plaintiffs in the consolidated case are long-term disability insurance claimants, each of whom alleges that he or she was improperly denied claim benefits by Unum. Collectively, Plaintiffs allege that Unum and its subsidiaries devised and implemented an elaborate scheme to illegally deny or terminate the long-term disability claims of thousands of disabled Americans, and brought this action to “stop [Unum’s] illegal and alarming practices and to ensure that past, current, and future victims obtain a full and fair review of their claims.” More specifically, Plaintiffs claim that Unum fiduciaries systematically: (1) provide financial incentives to physicians who will ‘rubber stamp’ previously made business decisions in derogation of medical evidence and their ethical obligations; (2) authorize senior in-house physicians to alter the written reports of “uncooperative” physicians in order to justify a claim denial or termination; (3) deny or terminate claims without proper review by a fiduciary based on financial targets rather than the medical and vocational evidence concerning claimants’ disabilities; (4) create ‘Duration Management’ documents that set target dates for cutting off claims and are withheld from claimants, attorneys, and reviewing courts; and (5) pressure physicians to change their medical opinions as to a claimant’s disability in order to justify a business-driven claim denial. Plaintiffs argue that these practices constitute a beach of fiduciary duty under ERISA and the regulations promulgated thereunder.
ERISA provides that “a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and — (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan.... ” 29 U.S.C. § 1104. The “minimum requirements for employee benefit plan procedures” under ERISA prohibit administration of claims procedures in a way that “unduly inhibits or hampers” the processing of claims for benefits. 29 C.F.R. § 2560.503-l(a)-(b)(3).
Interpreting these provisions, this Court has held that ERISA imposes high standards of fiduciary duty upon plan administrators which encompass three components:
The first is a “duty of loyalty” pursuant to which “all decisions regarding an *435 ERISA plan ‘must be made with an eye single to the interests of the participants and beneficiaries.’ ” The second ... imposes “an unwavering duty” to act both “as a prudent person would act in a similar situation” and “with single-minded devotion” to those same plan participants and beneficiaries. Finally, an ERISA fiduciary must “ ‘act for the exclusive purpose’ ” of providing benefits to plan beneficiaries.
Kuper v. Iovenko, 66 F.3d 1447, 1458 (6th Cir.1995) (internal citations omitted). If a fiduciary fails to meet these standards, he or she may be held personally liable for any losses to the plan that result from his breach of duty. Id. (citing 29 U.S.C. § 1109(a)). In addition, plan members are statutorily authorized to seek injunctive relief to enjoin prohibited practices. See 29 U.S.C. § 1132(a) (“A civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan_”).
If proven, Plaintiffs’ allegations of Unum’s systemic claims practices would certainly establish a violation of the terms of ERISA.[9] The salient question, therefore, is whether these claims must be brought as individual lawsuits by a series of claimants, or whether the claims can properly be raised under the auspices of a class action.
II.
Inexplicably, given the nature of this case, the majority offers little analysis of this Court’s holdings regarding the propriety of raising “course of conduct” cases as class actions. I will begin with this.
We recently advised that “cases alleging a single course of wrongful conduct are particularly well-suited to class certification .... ” Powers v. Hamilton County Pub. Defender Comm’n, 501 F.3d 592, 619 (6th Cir.2007). This proposition has been repeated consistently by this Court. See Olden v. LaFarge Corp., 383 F.3d 495, 508 (6th Cir.2004) (case suited to class certification because plaintiffs raised common allegations which would allow the court to determine liability for the class as a whole); Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir.1988) (acknowledging an “increasingly insistent need” to certify class actions for lawsuits arising out of a “single course of conduct”); Senter v. CMC, 532 F.2d 511, 525 (6th Cir.1976) (finding that “[ljawsuits alleging class-wide discrimination are particularly well suited for 23(b)(2) treatment since the common claim is susceptible to a single proof and subject to a single injunctive remedy.”).
The rationale supporting these holdings is well-justified. In cases alleging a common course of prohibited conduct, “the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion.... ” Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). In this context, class actions serve to achieve economies of time, effort, and expense. See In re American Medical Sys., 75 F.3d 1069, 1084 (6th Cir.1996).
*436 Moreover, in cases where the optimum result for any one plaintiff would be more than consumed by the costs, class actions may provide the only method of vindicating the rights of individuals who otherwise could not afford the litigation. Deposit Guar. Nat’l Bank v. Roper, 445 U.S. 326, 338, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). It is in this light that the Supreme Court observed that a district court’s ruling on the class certification issue is often “the most significant decision rendered in [] class-action proceedings” because when it is not economically feasible to obtain relief by filing a multiplicity of individual suits for damages, “aggrieved persons may be without any effective redress unless they may employ the class-action device.” Id. at 339, 100 S.Ct. 1166.
The purposes and benefits of class actions are particularly on point in the instant case. It is not practical or feasible for any one disability claimant to bear the cost of litigating the systematic and corporate-wide claims procedures and directives of a large, national disability provider such as Unum. The costs of conducting discovery regarding these procedures would undoubtedly exceed the damages any one plaintiff could hope to recover, and it would be a waste of economic and judicial resources to engage in duplicitous litigation of these common issues. Moreover, a relatively small award in favor of a given plaintiff would do nothing to address or deter the systemic processes of Unum. In such a case, class certification is the proper and practical way to proceed.
The majority takes issue with the fact that in any given plaintiffs case, individualized issues are present and a detailed review of a plaintiffs disability claim may determine that “the claim [was not] wrongfully denied.” Op. at 429 (emphasis in original). However, if it is proven that Unum engages in systematic and prohibited claims practices, a plaintiff is statutorily entitled to injunctive relief. See 29 U.S.C. 1104(a)(1)(A) (fiduciary must discharge his duties for the exclusive purpose of providing benefits to participants and their beneficiaries); 29 U.S.C. § 1132(a) (a civil action may be brought by a plan participant to enjoin any act or practice which violates any provision of the plan).
Moreover, under the majority’s reasoning, class actions would be prohibited in a wide variety of course of conduct cases that litigate issues of general liability before addressing individualized issues and damages. There are many such cases. In a toxic tort action, for example, the first order of business might be to determine that a corporation wrongfully disposed of an environmental toxin and created an environmental hazard. After this issue is resolved, individual plaintiffs would have to prove that the toxin caused injury their individual cases. In such cases, it may ultimately be determined that a given plaintiffs injuries were feigned, negligible or attributable to other sources, but so long as the named plaintiffs and the certified class proffered a cognizable claim of wrongdoing, the absence of damages in connection with one plaintiffs claim does not mean the case was not appropriately tried as a class action. See, e.g., Sterling, 855 F.2d at 1197 (affirming class certification and holding that the presence of questions peculiar to each individual member of the class was no bar when liability arose from a single course of conduct).[10] Class certification is equally appropriate here, *437 where Unum’s system-wide claims practices and policies are alleged to be common and can be litigated before individualized questions are addressed.
Similarly, in Title VII “pattern or practice” cases, courts routinely proceed by examining allegations that a company engaged in a common pattern or practice of discrimination, and approach individualized relief in a separate process. See Franks v. Bowman Transportation, 424 U.S. 747, 772, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) (establishing the “Franks model” where plaintiffs must demonstrate the existence of a discriminatory hiring pattern or practice, and the burden then shifts to the defendants to prove that individuals were not in fact victims of discrimination).[11] In Cooper v. Federal Reserve Bank, the Supreme Court observed that “[w]hile a finding of a pattern or practice of discrimination itself justifies an award of prospective relief to the class, additional proceedings are ordinarily required to determine the scope of individual relief for the members of the class.” 467 U.S. 867, 875-76, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984). In such cases, as here, it is not known at the onset of litigation whether an individual plaintiff has suffered discrimination that would warrant individualized relief: the primary and first issue to be addressed is the system-wide misconduct by the defendant.
Affirmative action cases also bear similarities to the instant case. In such cases, courts commonly begin by addressing common questions of liability and then move to questions peculiar to each individual class member. In Grutter v. Bollinger, for example, the district court granted class certification to individuals of specified races who were denied admission to the law school, and bifurcated the trial into separate liability and damages phases. 539 U.S. 306, 317, 123 S.Ct. 2325, 156 L.Ed.2d 304 (2003). It goes without saying that any individual class member might not have been admitted to the law school, even in the absence of allegedly prohibited practices of the university. In that case, as here, to establish whether any individual plaintiff was entitled to individual damages, a detailed review of the individual’s file would be required. But there, as here, the defendant’s wrongful practices, if proven, might justify injunctive relief for the class as a whole and “the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant’s liability have been resolved does not dictate the conclusion that a class action is impermissible.” Powers, 501 F.3d at 619.
To be sure, there are “course of conduct” cases that are not suited for class certification. The most common of these are cases where: (1) injuries arise from individualized or isolated incidents of wrongdoing that do not apply to the class as a whole; or (2) issues of individual compensatory damages predominate. In Falcon, for example, the Supreme Court rejected the plaintiffs’ claim that there was a policy of system-wide discrimination because the court found that the plaintiffs improperly generalized the experiences of discrete individuals who were subjected to discriminatory actions. 457 U.S. at 159, 102 S.Ct. 2364. The Court explained that “[i]f one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII *438 case would be a potential companywide class action.” Id. The instant case does not raise the same concerns. Here, Plaintiffs are not using the experiences of the few to establish a system-wide policy; instead, the heart of their claim is that Unum has employed corporate-wide directives that claims must be denied based on financial targets. Any individualized grievances flow from that overarching policy-
Class action designation is also inappropriate in course of conduct cases where issues of individual compensatory damages predominate. In Reeb, for example, this Court held that the district court abused its discretion by certifying a class under Rule 23(b)(2) because claims for individual compensatory damages predominated over declaratory or injunctive relief. 435 F.3d at 650-51 (expressing concern that highly individualized damages “counseled strongly” against certifying the class, but acknowledging that it would be appropriate for the plaintiffs to bring the case “in an action under Rule 23(b)(2) for declaratory or injunctive relief....”) That is exactly what is presented here: Plaintiffs seek injunctive relief as the primary form of relief, and individualized damages can be addressed at a later stage of the proceedings.
In sum, because this course of conduct case centers upon Unum’s common and systematic claims practices, and because a finding of general liability would justify class-wide injunctive relief, class certification is appropriate.
III.
In discussing the majority’s conclusions to the contrary, first and foremost, we must recognize that this Court is obligated to provide “substantial deference” to a court’s decision to grant class action certification inasmuch as a district court possesses the “inherent power to manage and control its own pending litigation.” Reeb, 435 F.3d at 643. The district court’s decision is subject to a “very limited review” and should be reversed only upon a “strong showing that the ... decision was a clear abuse of discretion.” Olden, 383 F.3d at 507 (internal citation omitted).
As the majority states, a plaintiff seeking class certification is required to satisfy the prerequisites of Rule 23(a) — numerosity, commonality, typicality, and fair representation — along with the relevant subsection of Rule 23(b), which, in this case, requires that “the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]” Fed R. Civ. P. 23(b)(2).
Defendants concede that the requirements of numerosity and commonality are met, but argue that typicality and cohesiveness are lacking. The majority agrees, and also asserts that Plaintiffs have failed to show “a causal connection between the alleged breach and the alleged harm.” Op. at 429. I disagree, and will address these issues in turn.
A.
The first contested issue is typicality. To establish this prerequisite, Plaintiffs must demonstrate that “the claims or defenses of the representative parties are typical of the claims or defenses of the class.” Fed.R.Civ.P. 23(a)(3). A claim is typical if “it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.” Beattie v. Century-Tel, Inc., 511 F.3d 554, 561 (6th Cir.2007) (quoting American Med. Sys., 75 F.3d at 1082). This Court has explained that “[tjypicality determines whether a suffi- *439 dent relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.” Sprague v. GMC, 133 F.3d 388, 399 (1998). For the district court to conclude that the typicality requirement is satisfied, “a representative’s claim need not always involve the same facts or law, provided there is a common element of fact or law.” Beattie, 511 F.3d at 561 (quoting Senter, 532 F.2d at 525 n. 31).
Here, as discussed above, Plaintiffs’ claims are typical because they arise from corporate-wide claims directives and procedures, which constitute a prohibited “course of conduct” and a “common element of fact or law,” as required in Beattie, 511 F.3d at 561. If Plaintiffs are able to prove that Unum has established corporate practices directing personnel to disregard medical diagnoses to meet predetermined financial targets, those findings advance the claims of all class members and would warrant an injunction prohibiting the illegal practices. Individualized damages may remain, but this does not counsel against class certification.
The majority disagrees, relying upon misguided interpretations of Reeb and Sprague to support a conclusion that typicality is lacking. The majority cites Reeb, 435 F.3d at 644-45, for the proposition that allegations of a “general policy” of discrimination are inadequate to establish entitlement to class certification because courts are required to conduct a rigorous analysis of the “incidents, people involved, motivations and consequences regarding each of the named plaintiffs’ claims.” Op. at 429. However, the Reeb Court’s admonition was based upon a finding that there was an abundance of individualized issues of proof and damages present in that case.
The Reeb Court relied upon Falcon, 457 U.S. 147, 102 S.Ct. 2364, for the proposition that resolution of employment discrimination claims would “require proof that particular managers took particular employment actions and that either the managers were motivated by a discriminatory animus or the actions resulted in a disparate impact upon the class.” Reeb, 435 F.3d at 644. The Court expressed concern that the plaintiffs were using the experiences of the few to allege an “abstract policy” of discrimination, and expressed concern that the discrimination alleged could affect many different aspects of employment, such as hiring, firing, promoting, giving benefits, providing vacation time, or delegating work assignments. Id. at 644-45.
In contrast, here, Plaintiffs allege that Unum fiduciaries employ systemic policies and practices that instruct medical and claims personnel to deny claims based on preestablished financial targets. Unlike discriminatory hiring, firing, and promotion practices that turn upon the statements and actions of specific managers to specific employees, Plaintiffs here are challenging specific practices and directives that apply to claims procedures across the board.
Moreover, Reeb is distinguishable because the Reeb Court was particularly concerned with the nature of the damages that were sought. The Reeb plaintiffs asserted a wide variety of claims, and requested $2 million in compensatory damages and $3 million in punitive damages. Id. at 642. The Court expressed concern that these damages included “future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.” Id. at 646. The Court noted that the plaintiffs sought an injunction but that “they did not specify the conduct they *440 sought to have enjoined.” Id. at 640. This scenario offers a stark contrast to the present case, where Plaintiffs seek in-junctive relief as the primary form of relief and are specific about the policies they seek to enjoin.
Most importantly, perhaps, the Reeb Court expressly advised that it would have been appropriate for the Reeb plaintiffs to bring the ease as a class action under Rule 23(b)(2) for declaratory or injunctive relief. Id. at 651 (“We emphasize, however, that this holding does not foreclose all Title VII class actions. Plaintiffs now have the choice of proceeding ... in an action under Rule 23(b)(2) for declaratory or injunctive relief....”). This is precisely the type of claim that is filed here. In this regard, Reeb is not just inapposite; it actually supports Plaintiffs’ argument for class certification.
The majority also relies on Sprague, 133 F.3d at 397-98, for the proposition that class certification is not proper if the plaintiff can prove his own claim but not prove the claims of other class members. Op. at 431-32. This case, if possible, is even more inapposite. The Sprague plaintiffs requested relief for the defendants’ violations of ERISA based on a bilateral contract theory and on an estoppel theory, and the Court found that the claims lacked typicality because success on either theory would require individualized proofs. 133 F.3d at 398. Under the bilateral contract theory, the district court would have to consider the a wide variety of documents signed by the plaintiffs; under the estop-pel theory, the court would need to determine “what statements were made to a particular person, how the person interpreted those statements, and whether the person justifiably relied on the statements to his detriment.” Id. This Court noted that “because of their focus on individualized proof, estoppel claims are typically inappropriate for class treatment” and concluded that “because each plaintiff’s claim depended upon facts and circumstances peculiar to that plaintiff, class-wide relief was not appropriate.” Id. Here, in contrast, Plaintiffs’ claims focus on system-wide policies and directives. This is not a case like Sprague that had no common thread of liability. Although individualized damages may exist for the class members, this issue can be resolved after issues of general liability and injunctive relief are resolved.
The majority’s faulty logic, and its misreading of Sprague, is perhaps clearest in the following statement: “That all of the plaintiffs may have been subjected to some or all of Unum’s alleged wrongful practices does not eliminate the need for an individualized assessment as to the ultimate propriety of the benefits decisions affecting each and every class member. Because individualized assessments are necessary, it cannot be said that if a named plaintiff succeeds in establishing Unum’s liability for breach of fiduciary duty, ‘so go the claims of the class.’ ” Op. at 432 (quoting Sprague, 133 F.3d at 399). This is perplexing. If a plaintiff proved that Unum engaged in systemic and illegal claims processing practices that harmed him as well as those similarly situated, he would certainly have proven that injunctive relief was warranted for the class. Moreover, if the majority’s reading were applied across the board and a plaintiff had to prove all plaintiffs’ claims by proving his own claim, class certification would be precluded in a wide variety of cases, including the toxic tort, Title VII, and affirmative action scenarios discussed above.
The majority reads Sprague too broadly. The statement that “as goes the claim of the named plaintiff, so go the claims of the class,” 133 F.3d at 399, stands for the proposition that any one plaintiff, in pursuing his own claims, must advance the interests of other class members. The *441 Sprague Court, in the quoted passage, was actually paraphrasing its earlier statement that “[a] necessary consequence of the typicality requirement is that the representative’s interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.” Id. (quoting American Med. Systems, 75 F.3d at 1082) (emphasis added). The Sprague Court went on to say that “in pursuing their own claims, the named plaintiffs could not advance the interests of the entire early retiree class. Each claim, after all, depended on each individual’s particular interactions with GM.... ” Id. (emphasis added).
Consequently, Sprague does not support the majority’s conclusion that typicality is lacking. Instead, it supports the opposite conclusion: because Plaintiffs have established that the litigation of their cases would advance the interests of the class, they satisfy the requirement of typicality.
Perhaps because of the majority’s undue focus on generalized admonitions in cases such Sprague and Reeb, the majority fails to acknowledge that courts have granted class certification in a number of cases involving claims that a corporation engaged in a wrongful practice impacting all class members. In Bittinger v. Tecumseh Prods. Co., 123 F.3d 877, 885 (6th Cir.1997), for example, this court affirmed the district court’s class certification decision in case governed by ERISA, over arguments that claims would be subject to varied defenses and arguments that the class members suffered varying levels of injury. This Court explained:
Though the level of claimed injury may vary throughout the class — a common feature of class actions routinely dealt with at a remedial phase — the basic injury asserted is the same: Tecumseh violated the terms of the collective bargaining agreements by unilaterally terminating fully-funded lifetime benefits. As noted above, those differences that exist — including the individual estoppel claims — can be dealt with through methods other than denial of class certification, at a later stage in the proceeding.
Id. In that case, we aptly noted that “the plaintiffs’ evidence appears to follow a pattern, and the people they claim made the representations are largely the same people.” Id. at 884. Here too, the evidence of alleged wrongdoing follows pattern; in this case, the alleged pattern is one of uniform and prohibited claims procedures. Plaintiffs’ claims, like the claims in Bit-tinger and Beattie, satisfy the typicality requirement because they arise “from the same event or practice or course of conduct that give[ ] rise to the claims of other class members, and ... are based on the same legal theory.” Beattie, 511 F.3d at 561.
Although we are at an early stage of the proceedings, it is noteworthy that Plaintiffs provide reason to believe that they could succeed in establishing that Unum’s alleged practices exist. Other plaintiffs have succeeded in similar cases involving the same defendants. Recently, in the matter of Merrick v. Paul Revere, a district court in Nevada issued an order upholding a jury’s award of punitive damages to plaintiffs in a trial involving Defendants in the instant case.[12] See Merrick v. Paul Revere, 594 F.Supp.2d 1168 (D.Nev.2008). *442 In the district court’s findings of fact, the court stated that the plaintiff had presented “overwhelming” testimonial and documentary evidence of “the existence of targets and goals to terminate [disability] claims” that were “... communicated to claim handling employees by such means as e-mails, and weekly Staff Meetings.” Id. at 1171-72. The court found that “[b]ased on the credible testimony about targets and goals, documents, and the duration of Defendants’ misconduct, there is every reason to conclude that Defendants gained well in excess of a billion dollars as a result of their claims handling misconduct.” Id. at 1176.
In another case affirming a jury’s award of punitive damages, the Ninth Circuit concluded that evidence existed that the same defendants “employed policies to achieve net termination ratios” and “had a conscious course of conduct firmly grounded in established company policies that disregarded the rights of insureds.” Hangarter v. Provident Life and Accident Ins. Co., 373 F.3d 998, 1014 (9th Cir.2004).[13] These findings support an argument that Plaintiffs’ claims are more than unfounded allegations and that the alleged practices they describe are systemic.[14]
In sum, here, where the practices alleged are corporate-wide and purportedly affect all class members, the claims satisfy the requirements of typicality. In such a case, there is no sound reason to proceed by requiring individual plaintiffs to advance the claims and try common issues of fact separately and repetitively.
B.
The majority next asserts that the claims do not satisfy the requirements of Rule 23(b)(2), which requires that “the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]” Fed.R.Civ.P. 23(b)(2).
Citing authority from the Third and Seventh Circuits, the majority asserts that there is a “well-recognized rule” that classes certified under Rule 23(b)(2) must be cohesive and homogeneous. Pointing to Reeb, 435 F.3d at 649, my colleagues declare that “where individualized determinations are necessary, the homogeneity needed to protect the interests of absent class members is lacking.” Op. at 432-33. As discussed above, Reeb is not fatal to Plaintiffs case, and there is a long line of cases that establish that individualized issues maybe determined after general issues of liability are resolved.[15]
*443 The majority opinion discusses reasons why “cohesiveness, or homogeneity is vital to Rule 23(b)(2) actions[,]” stating that there is the potential that unnamed class members will be prejudiced by a negative judgment in the class action, and that individual issues may pervade the action, making the suit unmanageable. Op. at 433. But the majority’s analysis stalls and does not state why the requirement of cohesiveness is lacking here. This lapse is telling; cohesiveness is plainly present in this case, where Plaintiffs state a common theory of wrongdoing and seek injunctive relief that would benefit class members across the board. See Beattie, 511 F.3d at 564 (finding that the proposed class was sufficiently cohesive in a consumer protection claim because the issues in that case were “subject to generalized proof, and thus applicable to the class as a whole” and because such issues “predominate^] over those issues that [we]re subject only to individualized proof.”) (citations omitted).
Moreover, the majority appears to take issue with the relief that is sought. Glossing over the fact that the primary form of relief requested is injunctive, the majority states that Plaintiffs request a constructive trust and an order requiring Unum to provide a full and fair review of claims for benefits that have been denied. My colleagues then conclude that this relief would expose Unum to a “one-way ratchet” where Unum would have to provide re-review of claims to determine if a class member was entitled to relief for an improper denial or termination of benefits.
Plaintiffs seek the following forms of relief:
[1.] Awarding plaintiffs and the Class declaratory relief determining the illegality of the conduct alleged and injunctive relief whereby UnumProvident and its subsidiaries are ordered to immediately cease ... engaging in the offending practices delineated herein;
[2.] Awarding plaintiffs and the Class equitable relief whereby Unum Provident and the subsidiaries are ordered to institute, under the supervision of the Court, new, national procedures that are in full compliance with ERISA;
[3.] Awarding plaintiffs and the Class equitable relief appointing a receiver and/or special master to serve as a neutral claims adjustor and assume the role of responsibility for responding to, acting upon, and making determinations pertaining to claims by plaintiffs and the Class and to provide a full and fair review, as required by 29 U.S.C. § 1133(2) of all claims for benefits under the plan that have been denied;
[4.] In the alternative, awarding plaintiffs and the Class a permanent injunction enjoining [the named defendants] from serving as claim fiduciaries and an the [sic] imposition of a constructive trust over the any [sic] trust assets controlled by [said defendants] [pursuant to] 29 U.S.C. § 1109; [and]
[5.] Awarding plaintiffs and the Class other appropriate reliefi.]
(J.A. 38.)
As the request for relief indicates, the imposition of a constructive trust is only one alternative form of relief. Plaintiffs also request injunctive and declaratory relief enjoining Unum from engaging in the specified prohibited practices, which are more general forms of relief that apply to the class as a whole.
Moreover, it would be perfectly acceptable for the district court to address individualized damages in a separate proceeding. There are a “number of management tools available to a district court to address any individualized damages issues,” such as “bifurcating liability and damage trials, or appointing a magistrate judge or special master to preside over individual damages proceedings.” Beattie, 511 F.3d at 562. *444 This is not an uncommon practice. “By-bifurcating issues like general liability or general causation and damages, a court can await the outcome of a prior liability trial before deciding how to provide relief to the individual class members.” Olden, 383 F.3d at 509 (citations omitted); see also Fed.R.Civ.P. 23(c)(4) (“When appropriate, an action may be maintained as a class action with respect to particular issues.”); Reeb, 435 F.3d at 658 (suggesting that bifurcated phases of the class action could help separate issues of class-wide claims of discrimination from individual employment decisions).[16] Consequently, the majority’s concerns regarding the form of relief sought are unwarranted.
C.
Finally, the majority asserts that class certification is inappropriate because, under Kuper, 66 F.3d at 1459, “a causal connection between the alleged breach and the alleged harm is ... a necessary element of an ERISA-participant’s breach-of-fiduciary-duty claim.” Op. at 429. The majority reasons that “whether a claim for benefits is wrongfully denied depends on a number of facts peculiar to the claimant’s case” and that “absent a showing that benefits were wrongfully denied, there can be no causal link between an alleged breach and a denial of benefits.” Op. at 429 (emphasis in original). This analysis is misguided for several reasons.
First, and importantly, the Kuper Court did not find that plaintiffs must provide a “causal connection” that their claims were “wrongfully denied” at the class certification stage of proceedings. The district court in Kuper had already granted class certification to the plaintiffs at an earlier stage of litigation, and was reviewing, de novo, the grant of summary judgment in favor of the defendants, after considerable discovery had been conducted, and after other dispositive motions had been decided. 66 F.3d at 1451-52. The Court did not discuss class certification requirements anywhere in its opinion, nor was the Court reviewing the district court’s decision with the substantial deference that is required when reviewing class certification.
Second, the Kuper Court’s discussion of a “causal connection” is taken out of context. In the passage cited by the majority, op. at 429, the Kuper Court concluded that summary judgment was appropriate because the plaintiffs had not demonstrated a “causal link” between the failure to investigate an investment and the harm suffered by the plan because the plaintiff had not demonstrated that “an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.” 66 F.3d at 1459-60. In other words, the Kuper plaintiffs had not proven that the defendants’ actions were improper, even on a general level. Here, as discussed above, proof that Unum had issued directives that valid medical decisions be disregarded in a quest to meet financial targets would certainly constitute a breach of duty warranting injunctive relief. Consequently, the Kuper Court’s statements cannot be plausibly offered for the proposition that each plaintiff must demonstrate that his claim was wrongfully denied at the class certification stage of proceedings.[17]
*445 This Court must take care not to confuse issues of general liability with issues of individualized causation and damages. As we have advised:
Although such generic and individual causation may appear to be inextricably intertwined, the procedural device of the class action permitted the court initially to assess the defendant’s potential liability for its conduct without regard to the individual components of each plaintiffs injuries. [... ] The main problem on review stems from a failure to differentiate between the general and the particular. This is an understandably easy trap to fall into.... Although many common issues of fact and law will be capable of resolution on a group basis, individual particularized damages still must be proved on an individual basis.
Sterling, 855 F.2d at 1200 (affirming grant of class certification in a mass tort class action). Here, by holding that Plaintiffs must establish that their claims were “wrongfully denied” at the class certification stage of proceedings and by denying class certification based on the presence of individualized issues, my colleagues fall into the “trap” of which the Sterling Court warned. Because general issues of liability could be resolved for the class as a whole, individualized issues of causation and damages were no bar to class certification in that case, and they should be no bar here.
IV.
In conclusion, the district court’s class certification decision should stand even under de novo review. But given the deferential standard of review that applies in this case, it is particularly improper for this Court to reverse the district court’s judgment. In so doing, my colleagues have misapplied the law of this Court, and have disregarded the valid purposes that a class action serves. For these reasons, I respectfully dissent.

. A fiduciary who issued corporate-wide directives to override or modify medical decisions based on predetermined target dates and financial incentives would plainly not be acting “with an eye single to the interests of" plan participants and "for the exclusive purpose" of providing benefits to plan participants. See Kuper, 66 F.3d at 1458.

. Securities fraud and consumer protection cases also frequently address general liability issues before they move to individualized findings. See, e.g., Mayer v. Mylod, 988 F.2d 635, 640 (6th Cir.1993) (in a securities fraud ac-lion, class action certification was appropriate even though some investors made money and some lost money, because questions of liability were common to all class members regardless of their level of damages).

. The Franks model of litigating pattern or practice cases continues to apply. See Int’l Bhd. of Teamsters v. United States, 431 U.S. 324, 328, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (applying the Franks model); McKennon v. Nashville Banner Publ. Co., 513 U.S. 352, 358, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (citing Franks and Teamsters with approval); Reeb v. Ohio Dep’t of Rehab, and Corr., 435 F.3d 639, 658 (6th Cir.2006) (citing Teamsters and Franks as authority).

. The defendants in Merrick were The Paul Revere Life Insurance Company and Unum-Provident Corporation. Merrick v. Paul Revere, 594 F.Supp.2d at 1168-69. The court’s order explains that in 1996-1997, Provident and Paul Revere merged with Unum to form UnumProvident. UnumProvident then entered into an agreement in which it took over all responsibility for handling Revere claims. Id. at 1173-74.

. The defendants in Hangarter were Provident Life and Accident Insurance Company, The Paul Revere Life Insurance Company, and UnumProvident Corporation. 373 F.3d 998.

. The claims in Merrick and Hangarter were raised by individual plaintiffs, but the courts' findings of fact, combined with large punitive damage awards that ranged from $5 to $8 million, indicate that the verdicts sought to target the deliberate and systemic practices of the defendants. See Merrick, 594 F.Supp.2d 1168; Hangarter, 373 F.3d 998. The availability of individual suits does not guarantee that the concerns of all potential class members will be protected, particularly when individual plaintiffs may not have the resources to bring a claim. In these circumstances, in-junctive relief in a class action context is a particularly appropriate tool.

.This Court has affirmed that "the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant’s liability have been resolved does not dictate the conclusion that a class action is impermissible.” Powers, 501 F.3d at 619. This Court also advised that it is not uncommon for the level of claimed injury to vary throughout the class; this is "a common feature of class actions” that can be dealt with through "methods other than denial of class certification, at a later stage in the proceeding.” Bittinger, 123 F.3d at 885.

. Insofar as the Defendants claim that an individual may not have a medical condition warranting disability benefits, Unum's records are the most relevant items of proof. If the refusal of benefits was based on permissible factors, such as the lack of a qualifying medical condition, Unum and its agents know best what those factors are and the extent to which they influenced Unum’s decision-making process. See Teamsters, 431 U.S. at 359, 97 S.Ct. 1843; Franks, 424 U.S. at 772, 96 S.Ct. 1251.

. The majority also cites to Hein v. Fed. Deposit Ins. Corp., 88 F.3d 210, 224 (3d Cir.1996), for the proposition that when a plaintiff is not wrongfully denied benefits, no "causal link” is established between the al *445 leged breach of fiduciary duty and the denial of benefits. Op. at 429. Similarly, the Hein court was addressing a grant of summary judgment and not class certification, and the majority's arguments fail for the same reasons discussed above.